IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|  | ǁ |  |
|---|---|---|
| TOMEKA WINSTON, | ǁ |  |
|  | ǁ |  |
| Plaintiff, | ǁ |  |
|  | ǁ |  |
| vs. | ǁ | No. 08-2058-STA-dkv |
|  | ǁ |  |
| CARGILL, INC. and SMITH DOYLE CONTRACTORS, | ǁ |  |
|  | ǁ |  |
| Defendants. | ǁ |  |
|  | ǁ |  |

---

ORDER GRANTING MOTION FOR LEAVE TO FILE
(DOCKET ENTRY 91)
ORDER GRANTING DEFENDANT CARGILL'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 77)

---

On January 14, 2008, Plaintiff Tomeka Winston and eight other individuals filed a joint pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.[1] (Docket Entry ("D.E.") 1). United States District Judge J. Daniel Breen issued an order on January 29, 2008 that, inter alia, severed the actions and directed the Clerk to open a new civil action for each plaintiff. (D.E. 2 at 2.) Plaintiff Winston was also directed to amend her complaint. (Id. at 3.)

On April 4, 2008, Plaintiff filed an amended complaint alleging

---

[1] Plaintiff's claims under 42 U.S.C. § 1981, which prohibit racial discrimination in the making and enforcing of private contracts, are analyzed under the Title VII McDonnell Douglas/Burdine framework. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). The Court's conclusion that Winston fails to establish a Title VII prima facie case governs the outcome of these issues, therefore, claims under § 1981 will not be addressed separately.

that Cargill discriminated against her on the basis of her race by requiring her to work in asbestos-contaminated areas and failed to rehire her in 2007 because of her race and /or in retaliation for protected activity.  (D.E. 6.)

On May 29, 2008, Cargill filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (D.E. 16.)  On August 6, 2008, Plaintiff responded to the motion to dismiss. (D.E. 24.) On March 26, 2009, the Court denied Defendant Cargill's motion to dismiss Plaintiff's claims. (D.E. 54.).  Also on March 26, 2009, the Court entered an order directing Plaintiff to show cause why her "claims of sex discrimination and retaliation against Cargill should not be dismissed with prejudice for [her] failure to" file the right-to-sue letter she purportedly received in connection with the second charge of discrimination filed against Cargill. (D.E. 55.)

Plaintiff and Cargill entered a joint stipulation of dismissal agreeing that all claims asserted against Cargill in the amended complaint arising from EEOC Charge No. 490-2007-03318, including her claims for sex discrimination and retaliation were voluntarily dismissed with prejudice. (D.E. 74.)

On July 30, 2009, Cargill filed a motion for summary judgment, along with a memorandum in support and exhibits. (D.E. 77.)  On August 26, 2009, Plaintiff filed her objections to Defendant's statement of undisputed facts and response. (D.E. 80; D.E. 81.) On October 21, 2009, Cargill filed a motion for leave to file a reply to Plaintiff's response. (D.E. 91.)  The motion (D.E. 91) is GRANTED. The Court has considered Defendant's reply. (D.E. 91, Exhibit A.) On November 17, 2009, Plaintiff filed objections to Defendant's reply. (D.E. 92.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)(same).

When ruling on a motion for summary judgment the court may consider "pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits." " Fed. R. Civ.

P. 56(c). "Other exhibits may be admitted into evidence and considered if the exhibits are properly authenticated and attached to an affidavit." Woodruff v. National Life Ins. Co., 2006 WL 2792204 (E.D. Tenn. 2006)(citing Guzman v. Denny's Inc., 40 F. Supp.2d 930, 935 n. 3 (S.D. Ohio 1999)). "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Federal Rule of Civil Procedure 56(e). Documents which do not meet those requirements cannot be considered by the court." Stuart v. Gen. Motors Corp., 217 F.3d 621, 635 n. 20 (8th Cir. 2000); see also Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000)(a court may consider "properly authenticated and admissible documents or exhibits" when evaluating a summary judgment motion); 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988)("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").[2]

---

[2]     Documents submitted which do not comply with the requirements of Rule 56(e) must be disregarded. See Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-69 (6th Cir. 1991); State Mutual Life Assurance Co. of America v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir. 1979). Plaintiff's response to Cargill's motion for summary judgment includes emails, company policies, photographs, and documents generated by the Tennessee Occupations Safety and Health Administration ("TOSHA"). The documents are offered without any supporting affidavit to verify their authenticity. The Court has reviewed the documents despite the fact that the documents were not properly authenticated.

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted).  The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter.  Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

I.  Relevant Facts

The relevant facts follow:[3]

_____

[3]  The Court's task in evaluating Defendant's motion for summary judgment is complicated by Plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides:

the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

Winston's Temporary Assignments to Cargill

1.  Cargill employs approximately thirteen full-time production
    employees at its Second Street grain elevator in Memphis
    (the "Facility"). (Affidavit of Tim Campbell ("Campbell
    Aff."), Exhibit A, at ¶ 4.)

2.  During the fall harvest season each year, the Facility
    requires additional temporary assistance, which it obtains
    through temporary workers supplied by Defendant Smith-Doyle
    Contractors, Inc. ("Smith-Doyle"). (See First Deposition
    of Tomeka Winston ("First Dep."), Exhibit B, at pp. 20:14-
    22:22; Second Deposition of Tomeka Winston ("Second Dep."),
    Exhibit C, at pp. 24:12-22.)

3.  The temporary workers commonly perform housekeeping
    functions in various locations throughout the Facility.
    (First Dep. at pp. 31:16-19.)

4.  During the 2003, 2004, 2005 and 2006 fall harvest seasons,
    Plaintiff, Tomeka Winston ("Winston"), performed
    housekeeping-related duties at the Facility as a temporary
    worker assigned from Smith-Doyle. (First Dep. at pp. 19:22-
    25, 31:16-19; Second Dep. at pp. 22:11-23:10.)

5.  Winston's last temporary assignment to the Facility ended
    in October of 2006. (First Dep. at pp. 111:15-17.)

Winston's Lack of Evidence of Asbestos Exposure

6.  Winston has no evidence that airborne asbestos fibers have
    been found within the Facility at any time. (First Dep. at
    pp. 37:10-38:5, 42:16-20, 49:6-25; Second Dep. at pp.
    28:19-25.)

7.  Winston has no evidence that any material in the Facility
    has ever been found to contain asbestos. (First Dep. at pp.
    41:25-42:11.)

---

Plaintiff objects to paragraphs 31-31 but has not affixed to the "objections"
copies of the portions of the record relied upon to evidence her dispute. Although
Plaintiff states that she has attached documentation to her response, no document
identifies or pertains to any "Caucasian temporary worker or permanent production
employee who worked at the Facility at the time she contends she was exposed to
asbestos" or "any temporary worker who was not required to work in the same areas
of the facility where she was required to work." The Court has attempted to
construe the undisputed facts from Plaintiff's verified complaint, the record
excerpts of deposition testimony, attached as exhibits to Defendant's motion and
reply, and the verified exhibits attached to the affidavit of Timothy Campbell.
After reviewing Plaintiff's unverified exhibits, the Court discerns no basis for
Plaintiff's additional objection to "all the above numbered statements" contained
in Defendant's statement of undisputed facts. Therefore, the Court adopts
Defendant's statement of material facts as undisputed.

8.  Winston cannot identify any particular part of the Facility in which she suffered asbestos exposure. (First Dep. at pp. 49:1-5.)

9.  Winston has no evidence to suggest that Cargill discovered the presence of airborne asbestos fibers at the Facility at any time since the date it purchased the elevator. (First Dep. at pp. 37:20-38:5, 41:23-42:20, 46:13-47:3, 48:1-9, 49:11-25.)

10. In December 2006, Cargill removed broken floor tiles from an area of the Facility due to a concern that they may have contained asbestos. (Campbell Aff. at ¶ 8; <u>see</u> First Dep. at pp. 46:9-12.)

11. This removal was performed by an environmental remediation contracting company on December 13, 2006. (Campbell Aff. at ¶ 8; *see* First Dep. at pp. 46:13-47:3.)

12. Cargill hired an environmental services company to conduct air monitoring during the removal. (Campbell Aff. at ¶ 8; <u>see</u> First Dep. at pp. 46:13-47:3.)

13. The testing found that the air quality in the area of the floor tiles during their removal easily satisfied all applicable standards. (Campbell Aff. at ¶ 8; <u>see</u> First Dep. at pp. 46:13-47:3.)

14. Winston admits she has no basis to suggest that the floor tiles removed from the Facility on December 13, 2006 contained any asbestos whatsoever and cannot dispute that the air monitoring performed in conjunction therewith demonstrated that the Facility's air quality satisfied all applicable laws and regulations. (First Dep. at pp. 41:25-42:11, 46:13-47:13; Second Dep. at pp. 28:19-25.)

15. In February 2007, the Tennessee Occupational Safety and Health Administration ("TOSHA") conducted asbestos testing on materials in the Facility in response to an anonymous complaint. (Campbell Aff. at ¶ 11; *see* First Dep. at pp. 47:20-25.)

16. TOSHA sampled and tested each of seven areas that had been identified as areas of concern by the complainant through an independent laboratory. (Campbell Aff. at ¶ 11; <u>see</u> First Dep. at pp. 47:20-25.)

17. TOSHA informed Cargill that it did not detect asbestos fibers in any of the seven samples it took during the inspection. (Campbell Aff. at ¶ 11; *see* First Dep. at pp. 48:1-9.)

18. Winston bases her belief that asbestos was present in the Facility on a warning sign that was posted in the vicinity of the broken floor tile in the fall of 2006. (First Dep.

at pp. 38:20-39:17; Second Dep. at pp. 28:3-25.)

19. Pursuant to its asbestos safety and removal policies, Cargill posted this sign as a precautionary measure until the tiles could be removed. (Campbell Aff. at ¶¶ 6-7.)

20. Winston concedes that no health care provider has informed her that she has been exposed to asbestos. (First Dep. at pp. 50:1-13.)

<u>Winston's EEOC Charges and Complaint</u>

21. On January 29, 2007, Winston filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that Cargill had assigned her to work in areas contaminated with asbestos because of her race. (D.E. 6; January 29, 2007 EEOC Charge ("First Charge"), attached as an exhibit to the Amended Complaint.))

22. On October 17, 2007, Winston filed a second charge of discrimination with the EEOC in which she alleged that Cargill had retaliated and/or discriminated against her on the basis of her sex by not providing her with a temporary position for the fall 2007 harvest season. (First Dep. at pp. 56:16-23, 66:20-14; October 17, 2007 EEOC Charge (the "Second Charge"), Exhibit D.)

23. Winston has not received a right-to-sue letter with respect to the Second Charge. (<u>See</u> First Dep. at pp. 66:10-68:12, 120:4-7.)

24. On January 14, 2008, Winston and eight other individuals (collectively, the "Plaintiffs") filed a joint Complaint against Cargill. (D.E. 1.)

25. On January 29, 2008, the Court severed that action into nine separate lawsuits, including the instant case. (D.E. 2.)

26. Winston filed her Amended Complaint on April 8, 2008, asserting that Cargill racially discriminated against her by requiring her to work in asbestos-contaminated areas, and failed to rehire her in the fall of 2007 because of her sex and/or in retaliation for some earlier protected activity. (D.E. 6.)

27. On May 29, 2008, Cargill moved to dismiss each of Winston's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Cargill's Rule 12(b)(6) Motion to Dismiss (D.E. 16.)

28. On March 26, 2009, the Court denied Cargill's Motion in full, but simultaneously issued an order requesting Winston

to show cause why her "claims of sex discrimination and retaliation against Cargill, Inc. should not be dismissed with prejudice for [her] failure to" file the right-to-sue letter she purportedly received in connection to her Second Charge. (D.E. 54; D.E. 55.)

29.   Winston subsequently entered into a joint stipulation to dismiss, voluntarily dismissing all claims arising out of her Second Charge, including her claims for sex discrimination and retaliation, with prejudice. (D.E. 74.)

30.   The only claim remaining in Winston's lawsuit is a cause of action for race discrimination in connection to purported asbestos exposure. (<u>See</u> D.E. 6; D.E. 74.)

<u>Winston's Claims for Race Discrimination</u>

31.   Winston cannot identify any Caucasian temporary worker or permanent production employee who worked at the Facility at the time she contends she was exposed to asbestos. (First Dep. at pp. 71:10-17.)

32.   Winston cannot identify any temporary worker who was not required to work in the same areas of the facility in which she was required to work. (First Dep. at pp. 71:18-72:11.)

II.   <u>Legal Analysis</u>

A.    <u>Racial Discrimination Based on Requirement that Winston Work in Asbestos Contaminated Environment</u>

The United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), established a method for evaluating evidence in discrimination cases, where, as here, Plaintiff has no direct evidence of discrimination.[4]  That method has been summarized as follows:

---

[4]   Plaintiff alleges, but does not provide credible, material evidence of direct discrimination "which, if believed requires a conclusion that unlawful discrimination was at least a motivating factor in the [Defendant's] actions" and "does not require a factfinder to draw any inferences" to reach that conclusion. <u>Kocak v. Community Health Partners of Ohio, Inc.</u>, 400 F.3d 466, 470 (6th Cir. 2005). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." <u>Amini v. Oberlin College</u>, 440 F.3d 350, 359 (6th Cir. 2006). Because the Court's review of the record finds no material evidence of direct discrimination the Plaintiff must establish a <u>prima facie</u> case of discrimination pursuant to the <u>McDonnell Douglas</u> formulation from which a discriminatory motive may be inferred.

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253.

To establish a prima facie case of discrimination, Plaintiff must demonstrate:

> (1) he [or she] was a member of a protected class; (2) that he [or she] suffered an adverse employment action; (3) that he [or she] was qualified for the position; and (4) circumstances indicated that his [or her] race played a role in the adverse employment action.

See McDonnell Douglas Corp. v. Green, 411 U.S. at 802; Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001). Put differently, element (4) requires Plaintiff to show, that for the same or similar conduct, he was treated differently than similarly situated employees.  The fourth prong requires that Plaintiff show that the person treated more favorably was similarly situated to Plaintiff in all relevant respects. Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002).  See also Clay v. United Parcel Service, Inc., 501 F.3d 695, 703 (6th Cir. 2007).

Winston contends that Cargill assigned her to work in an area contaminated with asbestos and did not assign any nonminority workers to that area. The parties agree that Plaintiff is a member of a protected class and that she was qualified for her position.

Defendant Cargill argues that Plaintiff fails to establish a prima facie case of race discrimination because she cannot demonstrate that she suffered an adverse employment action or that she was treated differently than similarly situated individuals of an unprotected class. (D.E. 77-1, p. 5.)

Defendant has provided the Court with the affidavit of Timothy Campbell, former Farm Services Croup Operations ("FSG") Leader at Cargill, who was responsible for the Cargill grain elevator where Plaintiff was employed from November 15, 1999, until January 3, 2008. (D.E. 77, p. 1.) Campbell states that Cargill employed thirteen (13) production employees during his tenure and all but one of those employees was African-American. (Id. at 2.) Campbell states that in September 2006, Tom Zemanick, Cargill's United States Grain Plant Operations Manager, observed some broken floor tiles underneath bin 101 in the southeast corner of the elevator. (Id.) Even though no manager had information or knowledge that the tiles contained asbestos, Zemanick directed that the tiles be removed and a warning sign was posted. (Id.) An environmental remediation contracting company removed the broken tiles on December 13, 2006, and an environmental services company conducted air monitoring during the removal. (Id.) The air quality during removal satisfied all applicable standards. (Id.; Exhibit 2, p. 6.) Additional testing was performed by TOSHA isn February 2007 and no asbestos fibers were detected. (Id. at 3; Exhibit 3.)

Winston responds that she was required to sweep and clean broken floor tiles from 2003 until 2006. She contends the affidavit of Campbell is "false" and that air monitoring did not occur until after the tile removal or did not occur at all. She relies on the fact

Cargill posted a warning sign and an unauthenticated "courtesy notification for asbestos removal" which Defendant filed with the Memphis Shelby County Health Department that the floor tiles were to be removed in December 2006, as proof that the tiles contained asbestos. (D.E. 81, p. 27.)

Asbestos is dangerous only when airborne and inhaled See generally 29 C.F.R. § 1910.1001(c)(establishing limits on the concentration of airborne asbestos to which an employee can safely be exposed). The "courtesy" notification does not establish that the tiles were found to contain asbestos and does not correlate to airborne asbestos which is measured by air monitoring. The Court notes that Winston's unauthenticated exhibits also contain a statement that "a survey completed by a professional asbestos survey company in 2000 found no asbestos" on the Cargill site. (Id. at 30.)

Plaintiff has provided no affidavit or authenticated document which to rebut Campbell's affidavit or which establishes that the floor tiles contained asbestos, that she was exposed to asbestos fibers, or that the air monitoring revealed any airborne asbestos. Plaintiff attached unauthenticated Cargill "Work Practices" which state that if vinyl flooring **has not been determined** to be asbestos free, then the following restrictions must be observed: no sanding, no stripping with other than low abrasion pads, and no burnishing or dry buffing of floors without sufficient finish to keep the pad from contacting asbestos-containing material. (D.E. 81, p. 24 (emphasis added).) Plaintiff does not, however, allege that she was required to perform any prohibited activity.

Winston testified during her deposition that she could not identify any Caucasian temporary worker or permanent production

employee who worked at the Facility at the time she contends she was exposed to asbestos. (First Dep. at pp. 71:10-17.) Winston also testified that she could not identify any temporary worker who was not required to work in the same areas of the facility in which she was required to work. (First Dep. at pp. 71:18-72:11.) In the response to the motion for summary judgment, however, Winston alleges that "Mike Thompson, who was the focus of the 2001 discrimination lawsuit, was not required to work in these contaminated areas" and cites the Court to <u>Mickens v. Cargill</u>, No. 01-2535-BBD (W.D. Tenn. July 23, 2002). The claims from the case which involved Thompson, a white employee, were for racial discrimination by wage disparity and layoffs. Those claims were determined to be without merit because the wage disparity was corrected by Cargill upon the discovery of a payroll error and Thompson was not treated differently than the minority employees. (<u>Id.</u>, D.E. 18.) Defendant replies that Winston alleges that Thompson was not required to work in the allegedly asbestos-contaminated areas in 2001, seven years before she filed this lawsuit and six years before she filed the EEOC charge on which this race discrimination claim is based. The 2001 case provides no support for Winston's present claims.

Because Plaintiff fails to establish by affidavits or other evidence that he suffered an adverse employment action or "was treated differently than similarly-situated non-minority employees," <u>Mitchell</u>, 964 F.2d at 582-83, Plaintiff fails to state a <u>prima facie</u> case of race discrimination. Bald assertions and conclusory statements fail to provide any factual support for Winston's claim of race discrimination. <u>Hartsel v. Keys</u>, 87 F.3d 795, 801 (6th Cir. 1996). There are no genuine issues of material fact as it relates

to Plaintiff's claim of race discrimination, and Defendant is entitled to judgment as a matter of law.

Defendant Cargill's motion for summary judgment (D.E. 77) is GRANTED in its entirety. Accordingly, the Court DISMISSES Plaintiff's complaint.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a).  See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, she may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals.  Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962).  The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue.  Id. at 445-46. The same considerations that lead the Court to dismiss this case

compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 22nd day of March, 2010.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE