```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

| | |
|---|---|
| TOMEKA WINSTON, | |
| Plaintiff, | |
| vs. | No. 08-2059-STA-dkv |
| CARGILL, INC. and SMITH DOYLE CONTRACTORS, | |
| Defendants. | |

ORDER GRANTING DEFENDANT SMITH DOYLE CONTRACTORS'
MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 76)

On January 14, 2008, Plaintiff Tomeka Winston and eight other individuals filed a joint pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.[1] (Docket Entry ("D.E.") 1). United States District Judge J. Daniel Breen issued an order on January 29, 2008 that, inter alia, severed the actions and directed the Clerk to open a new civil action for each plaintiff. (D.E. 2 at 2.)

On March 17, 2008, Plaintiff filed an amended complaint adding Smith Doyle Contractors ("SDC") and its employee, Neal Christenbury,[2]

---

[1] Plaintiff's claims under the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, et seq. ("THRA"), and 42 U.S.C. § 1981, which prohibit racial discrimination in the making and enforcing of private contracts, are analyzed under the Title VII McDonnell Douglas/Burdine framework. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 464 (6th Cir. 2001). The Court's conclusion that Winston fails to establish a Title VII prima facie case governs the outcome of these issues, therefore, claims under the THRA and § 1981 will not be addressed separately.

[2] All claims against Christenbury were dismissed by order entered April 22, 2008. (D.E. 7.) Christenbury was terminated as a party in this case.

as defendants. (D.E. 4.) Plaintiff alleged that SDC discriminated against her on the basis of her sex and failed to rehire her in retaliation for protected activity. (Id.)

On May 22, 2008, SDC filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 12.) Plaintiff failed to file a timely response to the motion to dismiss. On March 4, 2009, the Court denied Defendant SDC's motion to dismiss Plaintiff's claims of sex discrimination and retaliation, but granted SDC's motion to dismiss Plaintiff's vague claims of negligence. (D.E. 34.)

On July 30, 2009, SDC filed a motion for summary judgment, memorandum in support, and exhibits. (D.E. 76.) On August 26, 2009, Plaintiff filed her response to SDC's motion for summary judgment. (D.E. 82.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

When ruling on a motion for summary judgment the court may

consider "pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits." " Fed. R. Civ. P. 56(c). Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)(same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249.

Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

I.  Relevant Facts

The relevant facts follow:[3]

1. SDC is a commercial and industrial general contractor. (Exhibit C, Declaration of Neal Christenbury at ¶ 3.)

2. SDC provided temporary contract labor to Cargill for the Fall harvest at Cargill's grain plant at Second Avenue in Memphis, Tennessee. (Id. at ¶ 4.)

3. Employees worked through the harvest, primarily as grain handlers and were laid off at the end of the harvest season. (Id.)

4. The temporary assignments typically started sometime in August or September and ended sometime between November and January. (Id.)

---

[3] The Court's task in evaluating Defendant's motion for summary judgment is complicated by Plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides,

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

On September 29, 2009, Plaintiff filed a response to Defendant's notice of correction and filing of separate statement of material facts in which objects because Defendant SDC "made these statements of facts in bad faith." (D.E. 90.) Although Plaintiff contends that she "has provided the documentary evidence that supports her claims," she has not affixed to the "objections" copies of the portions of the record relied upon to evidence her dispute. Although Plaintiff states that she has addressed Defendant's statement of facts in her response, no documentary evidence is attached to her response to Defendant SDC's motion. (D.E. 82.) The Court has attempted to construe the undisputed facts from Plaintiff's verified complaint, the record excerpts of deposition testimony, attached as exhibits to Defendant's motion and reply, and the affidavit of Neal Christenbury. After reviewing Plaintiff's unverified exhibits, the Court discerns no basis for Plaintiff's objections to Defendant's undisputed facts. Therefore, the Court adopts Defendant's statement of material facts as undisputed.

5. Due to the difficulty in forecasting the timing and size of the Fall harvest, Cargill cannot predict the date it will need temporary assistance or the number of temporary employees it will need. (Id. at ¶ 4.)

6. To obtain temporary work, interested individuals are required to contact Cargill's FSC Manager, Martin Crowder, around August 1, to inquire about positions. (Id.)

7. Seasonal employees were hired directly at the job site by the on-site Cargill Supervisor and then placed on SDC's payroll. (Id. at ¶ 5.)

8. SDC did not maintain an on-site supervisor and did not employ grain handlers at any of its other job sites. (Id.)

9. SDC acted only as a screening agent for Cargill. (Id. at ¶ 6.)

10. SDC accepted applications and conducted pre-employment drug testing and background checks. (Id.)

11. Once employees were assigned to Cargill, SDC made no decisions with respect to their hiring, firing, or supervision. (Id.)

12. Martin Crowder, Cargill's on-site supervisor, made all decisions with respect to hiring, firing, and supervision. (Id.)

13. Each harvest season, Cargill determines who will be hired. (Id. at ¶ 7.)

14. Cargill was the only company for which SDC provided contract labor. (Id.)

15. If Cargill made the decision not to recall an employee, SDC did not have an alternative place to assign him or her. (Id.)

16. Plaintiff worked as a housekeeper for four harvests - Fall 2003, Fall 2004, Fall 2005, and Fall 2006. (Exhibit A, Deposition of Tomeka Winston, pp. 19-31.)

17. Although Plaintiff was hired to work for SDC and received paychecks from SDC, she never worked at SDC's office or any SDC worksite and was not supervised by SDC. (Exhibit B, Second Deposition of Tomeka Winston, pp. 36-37, Exhibit A, p. 20.)

18. Plaintiff understood at the time of her employment that her assignment was temporary. (Exhibit A, p. 20.)

19. On the previous harvests that Plaintiff worked, she was contacted by her aunt, Cargill employee Patricia Coburn,

      when the Company needed temporary assistance.)(Exhibit A, p. 30; Exhibit B, p. 25.)

20. At that point, Plaintiff would talk to Crowder. (Exhibit B, pp. 24-25.)

21. After the Fall-2006 season, however, Coburn did not contact Plaintiff. (Exhibit A, p. 55.)

22. Plaintiff eventually contacted Crowder on August 13, 2007 and asked if she could return to work the following season. (Exhibit A, pp. 55-58.)

23. Crowder told Plaintiff "he was fully staffed." (Exhibit A, p. 58.)

24. Plaintiff disputes Crowder's reason because he hired her brother. (Id.)

25. Plaintiff does not know when her brother contacted Crowder, when he was hired, and does not know when anyone else was hired. (Id. at pp. 58-59.)

26. Plaintiff is aware that other females were hired. (Id. at p. 65.)

27. Plaintiff did not speak with anyone at Cargill after August 13, 2007, and never applied for employment with SDC after last working for Cargill in the Fall of 2006, including for the Fall 2007 harvest.[4] (Id. at pp. 59-60, Exhibit B, p. 66, Exhibit C at ¶ 7.)

28. Plaintiff's sole basis for claiming that she was not rehired on the basis of gender and in retaliation for filing her January 2007 EEOC charge is that Cargill hired her brother. (Exhibit A, pp. 65, 69-70.)

29. Plaintiff did not inform any SDC employees that she had filed her January 29, 2007 EEOC charge against Cargill and does not know whether SDC was aware of it. (Exhibit A, p. 119.)

30. SDC was not aware of the charge. (Exhibit C, at ¶ 9.)

---

    [4] Although Plaintiff contends that she called SDC at some point in time, she does not recall when, including if it was before or after her January 2007 EEOC charge, to whom she spoke, or anything about the conversation, including what she asked SDC or what SDC said. (Exhibit A, pp. 116-19). Plaintiff did call Neil Christenbury at SDC at the end of August 2007 and informed him that per Cargill there was no work available at Cargill for the Fall-2007 harvest. Plaintiff requested a separation notice showing the last day she worked as a temporary employee at Cargill. She did not request other employment with SDC nor complain about discrimination or retaliation. (Exhibit C at ¶ 8.)

31. SDC played no role whatsoever in the decision not to rehire Plaintiff. (Id. at ¶ 7.)

32. SDC was not aware of Cargill's decision until Plaintiff called Christenbury in late August and informed SDC of Cargill's decision. (Id. ¶ 8.)

II. Legal Analysis

   A. Sex/Gender Discrimination

The United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), established a method for evaluating evidence in discrimination cases, where, as here, Plaintiff has no direct evidence of discrimination.[5] That method has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253.

To establish a prima facie case of sex discrimination, Plaintiff

---

[5] Plaintiff alleges, but does not provide credible, material evidence of direct discrimination "which, if believed requires a conclusion that unlawful discrimination or retaliation was at least a motivating factor in the [Defendant's] actions" and "does not require a factfinder to draw any inferences" to reach that conclusion. Kocak v. Community Health Partners of Ohio, Inc., 400 F.3d 466, 470 (6th Cir. 2005). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006). Because the Court's review of the record finds no material evidence of direct discrimination the Plaintiff must establish a prima facie case of discrimination pursuant to the McDonnell Douglas formulation from which a discriminatory motive may be inferred.

must demonstrate:

> "(1) she was a member of a protected class; (2) she was discharged [or demoted]; (3) she was qualified for the position; and (4) she was replaced by a person outside the class" or that a "comparable non-protected person was treated better."

See Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992).

When Plaintiff contacted Martin Crowder, Cargill's on-site supervisor, on August 13, 2007, and asked if she could return to work the following season, he told her "he was fully staffed." (Exhibit A, pp. 55-58.) Plaintiff alleges in the complaint that the Defendant hired male employees to replace her. (D.E. 4, p. 4.) Plaintiff's sole basis for claiming that she was not rehired on the basis of gender is that Cargill hired her brother. (Exhibit A, pp. 65.) However, Winston did not recall when her brother was hired or if anyone was hired by Cargill within a week or a month of her August 13, 2007 call to Martin Crowder seeking work. (Exhibit A, pp. 58-59.)

Plaintiff also admitted during her deposition that other females were hired for the 2007 season. (Exhibit A, p. 65.) Furthermore, she admitted that she did not apply for employment with SDC after her last employment with Cargill in the Fall of 2006 and she did not seek further employment at Cargill or call Martin Crowder after her phone call on August 13, 2007. (Exhibit A, pp. 59-60; Exhibit B, p. 66; Exhibit C at ¶ 7-8.)

Because Plaintiff fails to establish by affidavits or other evidence that she was replaced by a person outside her protected class, therefore she fails to satisfy the fourth element of the McDonnell Douglas prima facie case. Conclusory allegations and subjective beliefs are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." Mitchell, 964 F.2d at

585. There are no genuine issues of material fact as it relates to Plaintiff's claim of sex discrimination, and Defendant is entitled to judgment as a matter of law.

    B.    <u>Failure to Rehire/Retaliation Claim</u>

In order to establish a <u>prima facie</u> case of retaliation, Winston must show:

> (1) that [s]he was engaged in activity protected by Title VII; (2) that the defendant knew of this exercise of h[er] protected rights; (3) that the defendant consequently took an employment action adverse to plaintiff; and (4) that there is a causal connection between the protected activity and the adverse employment action.

<u>Stouss v. Michigan Dept. of Corrections</u>, 250 F.3d 336, 342 (6th Cir. 2001); <u>see also</u> <u>Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.</u>, 783 F.2d 50, 54 (6th Cir. 1986). Regarding the definition of "protected activity," Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees.. because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a), quoted in <u>DiCarlo v. Potter</u>, 358 F.3d 408, 420 (6th Cir. 2004).

On January 29, 2007, Winston filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that Cargill had assigned her to work in areas contaminated with asbestos because of her race. Approximately eight months later, on August 13, 2007, Plaintiff contacted Martin Crowder, Cargill's on-site supervisor and asked if she could return to work, but Crowder told her "he was fully staffed." (Exhibit A, pp. 55-58.)

    Plaintiff did not inform any SDC employee that she had filed an

EEOC charge and she does not know if SDC was aware of her charge. (Exhibit A, p. 119.) SDC was unaware that Cargill did not rehire Plaintiff until Winston called Christenbury in late August and informed him that Crowder was not rehiring her. (Exhibit C, at ¶ 8.)

Plaintiff presents no affidavits or evidence that SDC knew about her EEOC charge when Cargill did not rehire her in August 2007. She fails to rebut Christenbury's statement that he was unaware of the January EEOC charge against Cargill until he received the October 2007 charge she filed against SDC. (Exhibit C, at ¶ 9.) Likewise, Plaintiff has presented no affidavit or evidence demonstrating that SDC was involved in Cargill's decision that she would not be rehired in August 2007. Plaintiff Winston has presented no evidence of a causal connection between the January 2007 charge of discrimination and the failure of Cargill to hire her in August 2007. The Sixth Circuit has rarely found a temporal span of more than six (6) months sufficient evidence of a causal connection. DiCarlo, 358 F.3d at 420. Here, Cargill's failure to offer Plaintiff a job eight months after she filed the first charge is not sufficiently proximate in time to support an inference of wrongful retaliation. She has not satisfied the second and fourth requirements of a prima facie case of retaliation.

Plaintiff has failed to establish a prima facie case of retaliation. Plaintiff's allegations do not create a genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

Defendant SDC's motion for summary judgment (D.E. 76) is GRANTED in its entirety. Accordingly, the Court DISMISSES Plaintiff's complaint.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, she may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that lead the Court to dismiss this case compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED.

If Plaintiff files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed <u>in</u> forma <u>pauperis</u> and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 28th day of March, 2010.

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          UNITED STATES DISTRICT JUDGE